## ILLINOIS STOKER CO. v. K-B PUL-VERIZER CORPORATION.
### No. 5168.

Circuit Court of Appeals, Seventh Circuit.
Jan. 10, 1935.

Rehearing Denied Feb. 15, 1935.

A. M. Fitzgerald, of Springfield, Ill., and Henry Davis, of St. Louis, Mo., for appellant.

Clayton J. Barber, of Springfield, Ill., and Edwin Hort and Walter J. Rosston, both of New York City, for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

This action was instituted by appellee to recover royalties under a license granted to appellant on September 23, 1926, to manu- facture and sell certain coal pulverizing machinery and burners covered by patents owned by appellee.

Beside the general issue, appellant pleaded three defenses and counterclaims, and also a setoff based upon the alleged damages set forth in the counterclaims. The first answer and counterclaim alleged that appellant was induced to enter into the contract by means of appellee's false and fraudulent statements made to it concerning the capacities of Pulverburners built according to the patents, and as to the quality of the product of such machines. On this counterclaim appellant demanded damages in the sum of. $100,000. The second defense and counterclaim alleged a warranty of the validity and title of and the right to grant an exclusive license under the patent, and a breach of the latter warranty arising out of the fact that on October 29, 1925, appellee had granted to an English corporation the exclusive right to manufacture and sell K-B Pulverizers and Pulverburners covered by the foreign letters patent described in the declaration, or some one or more of them, for use in the British Empire, except Canada, and had also granted to said corporation a license to sell said Pulverizers and Pulverburners in all countries, except Canada, Mexico, and the United States, for a period of three years from November 30, 1925, with an agreement to extend the license for an additional two years at the option of the English corporation. It was stipulated that if the court found for the appellant under this plea, the damages should be assessed at $300. The third answer and counterclaim alleged appellee's promise to prosecute at its own cost and expense all infringements of the letters patent for the United States and Canada; that in 1926 and 1927 the Strong-Scott Manufacturing Company manufactured and sold machines infringing the letters patent of the United States mentioned in the agreement, and although appellant notified appellee of that fact, appellee in violation of its agreement, neglected and refused to prosecute the infringement. It was stipulated that if the court found for appellant under this plea the damages should be assessed at $500.

Appellee by its reply denied the allegations of fraud, and further alleged that if there were fraud in procuring the contract, appellant had waived it by performing its part of the contract after learning of the alleged false and fraudulent representations. With respect to the alleged breach of warranty of title, appellee pleaded a confession

and avoidance, the avoidance being that shortly after the contract was entered into, appellee procured the discontinuance by the English corporation, licensee, of all types of Pulverburners which appellant desired to manufacture, whereupon appellant consented that the English licensee might continue to manufacture those types which appellant did not propose to manufacture, providing, however, that appellant should receive the royalties therefor. To the plea of failure to prosecute the infringement of the Strong-Scott Manufacturing Company, appellee replied that it had prosecuted such suit and promptly caused that company to discontinue the manufacture and sale of any machines alleged to infringe appellant's products made by it under appellee's patents. It further denied that the Strong-Scott Manufacturing Company had ever manufactured and sold in the United States machines infringing the letters patent of the United States mentioned in the agreement set forth in the first count of appellant's declaration.

By written stipulation a jury trial was waived, and at the conclusion of the trial, appellant filed suggested findings of fact, and conclusions of law which the court refused. The court, however, found the facts specially and rendered its conclusions of law thereon to the effect that on January 15, 1929, there was due appellee from appellant, as royalties and interest, the sum of $18,272.02. Judgment was accordingly rendered, and from that judgment this appeal is prosecuted.

The questions presented are purely factual, and if the facts found are supported by substantial evidence, we are precluded from disturbing the judgment.

The alleged misrepresentations upon which appellant relies relate to the capacities of three different sized Pulverburners, referred to as small, medium, and large. It was conceded by appellant that the evidence as to some parts of the defenses was very conflicting, and that where such conflict occurred, the finding of the court is binding on all parties. The court found that the license agreement was entered into by the parties on September 23, 1926, whereby appellee granted to appellant the exclusive right to manufacture and sell machines, under the patents referred to, for a royalty at the minimum rate of $12,000, payable in semi-annual installments of $6000, on the tenth of each January and July, with the right of appellant to terminate the agreement at any time upon giving six months notice in writing

and paying the royalties for such final period of six months, and in addition thereto the further sum of $2500; that pursuant to the agreement appellant manufactured and sold machines under the letters patent, but terminated the agreement by written notice given to appellee on July 10, 1928, effective January 15, 1929; that the two installments of $6000 each for July 10, 1928, and January 10, 1929, were due and unpaid, and that there was also due the sum of $160.40 for the period from January 10 to January 15, 1929, and the further sum of $2500, due under the contract upon cancellation, together with five per cent. interest per annum upon each of said sums, from their respective due dates. The court further found that appellee did not make the alleged representations to appellant as to the capacities of the machines for the purpose of inducing appellant to enter into the contract, but that whatever representations were made in that respect were made to appellant prior to entering into the license contract, at a time when appellant was acting as a sales agent of appellee, and for the purpose of assisting appellant in its sales, and that all of said representations were substantially true and were made in good faith; that appellant in entering into the contract did not rely upon any of said representations, and that approximately one year before the license contract was entered into, appellant had in its possession a test or demonstration Pulverburner, provided by appellee, which was made under letters patent set forth in the license contract. The court further found that appellant suffered no damage by reason of any statement of fact by appellee with respect to the capacity or quality of the machines.

A perusal of the evidence in this cause convinces us that the findings with respect to fraud and misrepresentation were correct. Certainly this is true with respect to the two larger sizes of the machines. The greater controversy seems to be with respect to the machine of the smallest size, and, indeed, the evidence as to its capacity is conflicting. It is worthy of note that the demonstration Pulverburner which appellant had in its possession for almost a year prior to the execution of the license contract, was of the smallest pattern. It is true that this machine gave some trouble and perhaps did not function properly, or produce the amount of pulverized coal as represented, but there is evidence to the effect that this result was caused by appellant's failure to use carborundum hammers which appellee had advised. While

that fact was controverted, yet the evidence supporting it was substantial, and the court was warranted in believing that which it deemed more worthy of credit. The court's position in this respect is greatly supported by the fact that up to the time this action was instituted appellant had never made any claim that there had been any false or fraudulent representations, but on the other hand, had continued to pay the royalties up to January 10, 1928, without protest, when at that time, if appellant's contention is true, appellee was indebted to appellant in approximately the sum of $50,000. Aside from the fact that such conduct might or might not constitute a waiver of prior fraudulent representations, it should very properly be considered in determining the weight of the evidence supporting the truth of the representations. The court's finding in this respect was further supported by the fact that appellant at the time it entered into the contract had full knowledge of all false representations, if any, which appellee had made to it, and continued to manufacture and sell the machines and to perform its part of the contract until its effective termination.

The court further found that prior to entering into the license contract in suit, appellee had granted Edgar Allen and Company, Limited, a British corporation, the right to manufacture and sell in the British Empire, except Canada, machines under said letters patent, yet, shortly after licensing appellant, appellee procured the discontinuance by said British company of the manufacture and sale of all types of the machines which appellant desired to manufacture, and appellant's consent to that arrangement in consideration of the payment of royalties to appellant. The evidence on this issue was conflicting. That such an agreement was proposed, and practically agreed upon, can not well be denied, but there is some evidence to the effect that the agreement was not perfected as to some of its details. It is not denied, however, that the British company ceased to manufacture and sell any type of the machines which appellant manufactured and sold, or desired to manufacture and sell, after appellee procured the British company's agreement not to do so, nor did appellant ever manufacture or sell any type of machines which the British company thereafter manufactured or sold. Furthermore,

some time after December 13, 1926, appellant sent the following telegram to appellee: "Wire immediately what money per year *we* have received from Edgar Allen on royalties." (Our italics). Later, without protest, appellant paid to appellee the full amount of royalties due to appellee under its license agreement up to January 10, 1928. The evidence further discloses that at the time the license contract in suit was entered into, appellant had full knowledge of the license agreement which appellee had made with the British company. These facts strongly support appellee's contention and the court's finding in this respect, and we can not disturb the finding.

The court further found that the machines manufactured by the Strong-Scott Manufacturing Company did not in fact infringe any of the letters patent described in the license contract. It also found that upon receiving notice from appellant that the Strong Company was an infringer of the patents named in the appellant's license contract, appellee with reasonable diligence instituted suit against the Carry Ice Cream Company which was using the Strong machine. The prosecution of that suit was discontinued, however, because appellee concluded that there was no infringement. This record discloses that the evidence as to the infringement was quite conflicting, and we are convinced that the trial court's finding in this respect was warranted. It also is supported by the fact that appellant raised no further objections until this suit was instituted, and continued to pay the full amount of royalties due under its contract up to January 10, 1928. It is also worthy of note that the terms of appellant's license agreement only required appellee to prosecute infringements of the patents which would tend to render nugatory the monopoly arising from them. The record does not disclose that the alleged infringement in any way actually affected appellant's monopoly or the enjoyment of the benefits of its contract. Indeed, appellant stipulated at the trial that the damages under this plea, if the court should find for it, should be assessed at $500, and under the evidence we think this amount must be considered as nominal.

We are not authorized to disturb the findings. The judgment is therefore affirmed.